Samuel Corbin **JOHNSON, III,** Appellant,

v.

Kathleen Finnerty **JOHNSON,** Appellee.

No. S–13251.

Supreme Court of Alaska.

Aug. 28, 2009.

See also 2009 WL 564692.

Robert C. Erwin, Law Offices of Robert C. Erwin, LLC, Anchorage, for Appellant.

Mary A. Gilson, Allison E. Mendel, Law Offices of Mendel & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Kathleen and Samuel Johnson divorced in 2007. During the divorce proceedings, Kathleen drafted a proposed order regarding the division of Sam's military retirement benefits. Sam filed objections to some of the document's provisions with the superior court; Kathleen responded to the objections and filed a revised proposed order. A month later, the court signed the revised order along with the couple's divorce decree. Nine months after the entry of the order, Sam filed a motion to correct it. Sam argued that a provision stating that Kathleen will continue to receive half of Sam's retirement benefit payments, even if she remarries, was inappropriately included in the order. The superior court denied the motion. Sam appeals, making a different argument about the burden he will face should he ever cease to receive the retirement benefits. Because the superior court did not abuse its discretion in denying Sam's motion and because Sam raises a new argument for the first time on appeal, we affirm the superior court's order.

## II. FACTS AND PROCEEDINGS

Samuel Corbin Johnson, III and Kathleen Finnerty Johnson were married in 1972; Kathleen filed for divorce in 2005. A trial regarding custody of one minor child, child support, and the division of assets took place in the superior court in Anchorage in May of 2007.[1] The focus of this appeal is Sam's military retirement pension, which he and Kathleen agreed to split 50/50 in keeping with the parties' mutual understanding that they would evenly divide their marital estate.

On the second day of the trial, Kathleen's attorney told the court that Kathleen had "a proposed order dividing the military pension" and Sam's attorney acknowledged that he had received a copy of it. Sam's attorney asked for time to send the order to an expert for review. The court granted permission, instructing Kathleen's attorney to send the order that day and to request a prompt response. The court directed the parties to "submit [the order] to the court by next Thursday," giving Sam eight days to respond. On the final day of the trial, Kathleen's attorney again raised the issue of the retirement benefits order, telling the court that he had given it to Sam's attorney but had not received any response despite the court's deadline having passed. Sam's attorney stated that his expert had the order, called the expert from the courthouse, and then reported to the court that there was information missing from the document. The court gave Sam another deadline for submitting objections to the draft order and Kathleen a date by which to respond to Sam's objections.

Sam filed objections to the proposed order. The objections related to personal information that was not included, as well as some concerns about extraneous language.[2] There was no objection to provisions regarding continued payment of benefits to Kathleen in the

---

1. Most of what occurred at trial is irrelevant to the appeal here. Sam filed a separate appeal regarding several aspects of the division of marital property, and this court ruled on that appeal on March 4, 2009. *Johnson v. Johnson*, Mem. Op. & J. No. 1335, 2009 WL 564692 (Alaska, March 4, 2009).

2. The objections were: (1) Sam's "address, his date of birth and all of his service information" were not included in Paragraph 1 of the order; (2) in Paragraph 2, Kathleen was incorrectly listed as the defendant in the divorce and necessary biographical information about her was missing; (3) Paragraph 3 did not state the "full dates of marriage"; (4) Paragraph 4 reached a conclusion about the length of marriage that was

unsupported because of the information missing from Paragraph 3; (5) Paragraph 5 "provides that Ms. Johnson is to receive 50% of Mr. Johnson's military retired pay," which is defined in Paragraph 6 as "retired pay before any statutory, regulatory, or elective deductions are applied," but the Uniformed Services Former Spouses Protection Act (USFSPA) calls for dividing retirement pay as defined therein; and (6) Paragraph 24 inappropriately referred to an agreement regarding life insurance. Attached to the document was a letter from Sam's expert describing the six objections as well as information from a handbook about the definition of retirement pay under the USFSPA.

event she remarries or if Sam stops receiving payments from the military. Kathleen filed a response addressing each of Sam's objections and asked that the court approve "the First Revised Order Dividing Military Retired Pay and Benefits," which she filed contemporaneously.[3] On June 26, 2007, the superior court issued a divorce decree as well as findings of fact and conclusions of law. On the same day, the court signed the First Revised Order.

Sam filed a "Motion to Correct Clerical Mistakes in Judgment" on March 26, 2008. He asked the superior court to "correct a clerical mistake" in the First Revised Order "which awards 50% of husband's federal pension even on remarriage of the wife."[4] He cited Civil Rule 60(a) and (b)(1) in support of his motion. The memorandum in support included little additional argument or explanation, although it did indicate that "Section[s] 8 & 9" of the First Revised Order contained the language to which Sam objected.[5] It also asserted that the order "finds that the pension payments continue from Sam Johnson even if Kathleen remarries even though Air Force Retirement benefits cease on remarriage." (Citation omitted.)

Kathleen filed an opposition to Sam's motion. She noted that "the paragraphs in dispute in this motion practice, paragraphs eight (8) and nine (9) are *identical*" in the original proposed order and in the first revised order.[6] (Emphasis in original). Kathleen argued that Sam's claims under Civil Rule 60(a), which allows for the correction of clerical errors in court orders, and Civil Rule 60(b)(1), which allows for corrections in cases of "mistake, inadvertence, surprise or excusable neglect," were without merit. Kathleen further noted that according to an American Bar Association publication, remarriage does not impact military retirement benefits.

On July 30, 2008, the superior court denied Sam's motion. The court noted that the order was "carefully crafted by the parties and reviewed by the defendant's expert" and reasoned that "the particular care of the parties here leads the court to the conclusion that the Motion to 'Correct' the Order should be denied."

Sam appeals.

## III. STANDARD OF REVIEW

▮ Interpretations of court rules, including whether a judgment or court order can appropriately be corrected under Rule 60, are questions of law.[7] We review issues of law with independent judgment, "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy." [8]

> The appropriate pay center shall pay the sums called for above directly to Former Spouse to the extent permitted by law at the same time the Member receives retired pay.

3. Neither party claims, nor does the record indicate, that Sam filed a reply to Kathleen's response or in any other way indicated further objections to the proposed order or the First Revised Order.

4. Sam also noted that "the [order] for the husband does not include any such provisions as to wife's pension awarded to the husband." Attached to the motion was a copy of an order, signed by the court and the parties in late 2007, giving fifty percent of Kathleen's federal retirement benefits to Sam.

5. Paragraph 8 of the First Revised Order reads:
Former Spouse will receive the same proportionate share of any cost-of-living or other increases as part of her property interest in Member's military retired pay. Said payments shall continue during the joint lives of the parties regardless of the future marital status of either party. They shall terminate only upon the death of either Former Spouse or Member.
Paragraph 9 reads:

6. The original proposed order was purportedly attached to the opposition filing, but the exhibit contains only the first page of that document, on which Paragraphs 8 and 9 do not appear. The complete original proposed order does not appear anywhere in the record before us.

7. *Jensen v. Froissart*, 982 P.2d 263, 266 (Alaska 1999) (citing *DeVaney v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. DeVaney*, 928 P.2d 1198, 1200 (Alaska 1996)); *see also DeVaney*, 928 P.2d at 1200 ("Whether an error is properly classified as a 'clerical error' as that term is used in Rule 60(a) involves interpretation of that rule and therefore is a question of law.").

8. *Jensen*, 982 P.2d at 266 (citing *State, Dep't of Revenue, Child Support Enforcement Div. v. Wetherelt*, 931 P.2d 383, 390 n. 11 (Alaska 1997)).

■ After resolving any legal issues, "we review the trial court's decision to amend the judgment under Rule 60(a) for an abuse of discretion."[9] We have also stated that we "will not disturb a trial court's ruling on a Rule 60(b) motion unless an abuse of discretion is demonstrated."[10]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Denying the Rule 60 Motion.

Alaska Civil Rule 60(a) allows a court to correct clerical errors in judgments or orders.[11] We have interpreted "clerical errors" to mean accidental omissions, "a copying or computational mistake," or the like.[12] Rule 60(b) allows a court to change a judgment or order if doing so would be just, and based on "mistake, inadvertence, surprise or excusable neglect."[13]

■ Sam's Rule 60 motion concerned only the provision he interprets as providing that Kathleen will continue to receive fifty percent of Sam's military retirement benefits if she remarries. He argued that the provision constituted a clerical error or was entered improperly by mistake. In denying the mo-

tion, the superior court noted that the parties "carefully crafted" the order before the court signed it. It is clear from the record that both parties had time to review the language of the order, and in particular that the court gave Sam additional time to seek the advice of an expert before submitting objections to it. These facts indicate that the remarriage provisions were neither a clerical error nor a mistake. Thus, we hold that the superior court did not abuse its discretion in deciding not to make any change to the order pursuant to Rule 60.[14]

Sam now asserts that the remarriage provision was "slipped into" the revised order. Kathleen counters that the only changes to the order were in response to Sam's objections. The original draft is not in the record, so we have no way to assess whether Kathleen's claim is correct. But whether the provisions were unchanged or not, Sam did not make this assertion below. Because the superior court was not presented with that issue, it is not properly before us.[15]

Furthermore, we note that it is not contested on appeal that the Uniformed Services Former Spouses Protection Act,[16] which allows for the division of military retirement

9. *Frost v. Ayojiak,* 957 P.2d 1353, 1355 (Alaska 1998); *see also Gibson v. GEICO General Ins. Co.,* 153 P.3d 312, 320 (Alaska 2007) ("[D]emonstrating an abuse of discretion requires a showing that the [outcome] 'was arbitrary, capricious, manifestly unreasonable, or improperly motivated.' " (quoting *Sourdough Dev. Servs., Inc. v. Riley,* 85 P.3d 463, 466 (Alaska 2004)) (internal quotation marks omitted)).

10. *Morris v. Morris,* 908 P.2d 425, 427 (Alaska 1995).

11. Alaska R. Civ. P. 60(a) ("Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.").

12. *See Jensen,* 982 P.2d at 267–68 (quoting *In re W. Tex. Mktg. Corp.,* 12 F.3d 497, 504–05 (5th Cir.1994)) (upholding superior court's decision to correct judgment to insert date on which interest began to accrue where court had made clear on record it intended the judgment to include that information); *DeVaney,* 928 P.2d at 1200–01 (upholding superior court's decision to

correct child support order in which uncorrected text conflicted with parties' and court's clear intent).

13. Alaska R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . .").

14. Sam also makes an argument regarding additional statements in the superior court's order, but the portions of the ruling to which he refers were not the basis for the court's decision. He further contends that the lack of a parallel remarriage provision in a separate order regarding Kathleen's retirement benefits is significant, but we are affirming the superior court's ruling that the provision in Sam's order was not a mistake because the parties had thoroughly reviewed its contents.

15. *See Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").

16. 10 U.S.C. § 1408 (2006).

benefits between divorcing spouses, makes the remarriage of a former spouse irrelevant for purposes of the continued right to receive a portion of military retirement benefits accrued during a marriage.[17] The policy behind this statute is sound:

> The spouses of military members make important sacrifices for our national defense. Military members must move frequently, and these moves make it difficult for their spouses to establish traditional careers and large earning capacities. Military members must also be away from home for unusually long periods of time, and thus are not able to perform homemaker and child care duties as consistently as spouses with more flexible schedules.... Former spouses of service members certainly make greater sacrifices for our country than former spouses of civilians—and that is why it is fundamentally wrong to give former spouses of service members *less property rights* than former spouses generally. For purposes of dividing retirement benefits upon divorce, all retirement benefits, both military and non-military, should generally be subject to the same set of rules.[18]

Even if paragraphs eight and nine were not in the order signed by the superior court, the consequence of any future marriage of Kathleen would be the same—she would continue to receive half of Sam's military retirement benefits.

### B. Sam's Argument Regarding Shortfall Provisions Is Waived.

■ Sam claims that provisions in the order "place a life long obligation on Sam Johnson to pay fifty percent of his military pension to his ex-spouse; even if for some reason that pension is not paid to him by the United States." Sam is concerned about such provisions because "[t]he present economic crisis and the extraordinary demands for federal funds to cure the present economic crisis could lead to a diminution of spousal pension benefits. In such even[t], Sam Johnson would be liable for such reduction...." Sam argues that this requirement "did not appear in the draft [order] submitted for counsel approval." Sam does not indicate which language in the order might lead to this result, but he does not contest Kathleen's assumption that the relevant paragraphs are numbers sixteen, seventeen, and twenty-one.[19]

Sam did not raise this argument below, and so it is waived.[20] If the military ever reduces or eliminates Sam's retirement benefits, any dispute that arises between Sam and Kathleen about whether and how much Sam is required to continue to pay Kathleen should be brought to the superior court for resolution.

**17.** *See id.;* Marshal Willick, Military Retirement Benefits in Divorce 172–73 (1998). Sam's counsel acknowledged as much at oral argument on appeal.

**18.** 2 Brett R. Turner, Equitable Distribution of Property § 6:3, at 21–22 (3d ed.2005) (emphasis in original).

**19.** Paragraph 16 of the First Revised Order reads:
> If the amount paid by the military pay center to Former Spouse is less than fifty percent of Member's gross retired pay Member shall initiate an allotment to Former Spouse in the amount of any such difference to be paid from any federal entitlements due Member, with said allotment to be initiated by Member immediately upon notice of such difference, and making up any arrearages in installments not less in amount or longer in term than the arrearages accrued.

Paragraph 17 reads:
> If in any month direct payment is not made to Former Spouse by the military pay center, and federal entitlement exists against which such an allotment may be initiated, or for whatever reason full payment by allotment is not made in that month, or amount paid through the allotment is insufficient to pay the difference specified above, Member shall pay the amounts called for above herein directly to Former Spouse by the fifth day of each month in which the military pay center and/or allotment fails to [do] so, beginning upon entry of this Order.

Paragraph 21 reads:
> Member will pay Former Spouse her interest as herein provided. Member is not relieved of this obligation except to the extent that he is notified that the interest of Former Spouse has been paid directly to her by the servicing Finance Center.

**20.** *See Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").

## V. CONCLUSION

For the reasons explained above, we AFFIRM the superior court's order denying Sam's Rule 60 motion.